J-A02011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RHAMIN A. TURNER | : | |
| | : | |
| Appellant | : | No. 726 MDA 2018 |

Appeal from the Judgment of Sentence April 19, 2018
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0000496-2017,
CP-36-CR-0000937-2017, CP-36-CR-0001044-2017

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY LAZARUS, J.:                **FILED MARCH 01, 2019**

Rhamin A. Turner appeals from his judgment of sentence,[1] entered in

the Court of Common Pleas of Lancaster County, after a jury found him guilty

---

[1] We note that Turner filed one notice of appeal for three docket numbers. Our Supreme Court has held that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case." **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018).  However, the Court in **Walker** declined to apply the rule to the case before it, because to do so would run "contrary to decades of case law from [the Pennsylvania Supreme Court] and the intermediate appellate courts that, while disapproving of the practice of failing to file multiple appeals, seldom quashed appeals as a result."  **Id.**  Although the Court instructed that, prospectively, a failure to file a notice of appeal for each lower court docket will result in quashal of the appeal, Turner's notice of appeal was filed prior to the **Walker** ruling.  Accordingly, **Walker** is not controlling, and we decline to quash Turner's appeal.

of three counts each of possession with intent to deliver cocaine ("PWID")[2] and criminal use of a communication facility.[3]  Upon careful review, we affirm.

Turner was convicted of the above offenses after engaging in three separate drug transactions with a confidential informant ("CI").  The transactions were conducted under the auspices of the Selective Enforcement Unit of the Lancaster City Bureau of Police and were described as "buy-walk" transactions, in which an undercover officer uses a CI to "go to various areas in Lancaster to attempt to purchase controlled substances from people.  After the purchase is made, the suspect in the investigation would not be stopped; rather, the suspect would be allowed to walk away."  Trial Court Opinion, at 12-13 (citations to record omitted).  The operation was run by Officer Jared Snader, with the transactions occurring in April, May, and June of 2016.  Three separate criminal informations were filed against Turner on February 6, 2017, March 6, 2017 and March 9, 2017.

On appeal, Turner raises two issues for our review:

1.  Whether the trial court erred when it denied pre-trial the production of the confidential [i]nformant.  Since identity was the defense, the court's denial was a significant hindrance to [Turner's] defense and denied him his constitutional right to confront witnesses against him and to compel witnesses to appear[.]

2.  Whether the evidence was insufficient as a matter of law to convict [Turner] of the relevant drug sales.  There was no identification by police, the informant was not produced, there was

---

[2] 35 P.S. § 780-113(a)(30).

[3] 18 Pa.C.S.A. § 7512(a).

no search of [Turner's] house, no audio/video, no pictures, no fingerprints, no DNA and no recovery of prerecorded money[.]

Brief of Appellant, at 5.

Turner first asserts that the trial court erred in failing to grant his motion to produce the CI. Turner argues that, because his defense was one of mistaken identity, "the identity and credibility of the informant was completely material to the asserted defense as there was only a single Commonwealth [eye]witness[.]" Brief of Appellant, at 11. Turner relies upon our Supreme Court's decision in **Commonwealth v. Payne**, 656 A.2d 77 (Pa. 1994), in which the Court reversed the trial court's denial of the defendant's motion to produce a CI where the sole witness to the sale was an undercover state trooper. Turner is entitled to no relief.

We begin by noting that "[o]ur standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." **Commonwealth v. Watson**, 69 A.3d 605, 607 (Pa. Super. 2013) (citation omitted).

Pennsylvania Rule of Criminal Procedure 305(B) provides as follows:

(2) Discretionary With the Court.

(a) In all court cases, except as otherwise provided in Rule 263 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(i) the names and addresses of eyewitnesses[.]

Pa.R.Crim.P. 305(B)(2)(a)(i). The Pennsylvania Supreme Court has adopted

the following guidelines regarding the disclosure of confidential informants:

> We believe that no fixed rule with respect to disclosure [of the confidential informant's identity] is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Commonwealth v. Carter*, 233 A.2d 284, 287 (Pa. 1967), quoting *Roviaro*

*v. United States*, 353 U.S. 53, 60-62 (1957). This balance is initially

weighted toward the Commonwealth, which holds a qualified privilege to

maintain an informant's confidentiality to preserve the public's interest in

effective law enforcement. *Commonwealth v. Bing*, 713 A.2d 56, 58 (Pa.

1998). However, the balance tips in favor of disclosure where guilt is found

solely on police testimony from a single observation and testimony from a

disinterested source, such as the informant, is available. *Id.* However,

"[w]here other corroboration of the officer's testimony exists, disclosure of the

informant's identity is, of course, not necessarily required." *Payne*, 656 A.2d

at 79.

> [A] defendant seeking production of a confidential informant at a suppression hearing must show that production is material to his defense, reasonable, and in the interest of justice. By this we mean that the defendant must demonstrate some good faith basis in fact to believe that a police officer-affiant willfully has included misstatements of facts in an affidavit of probable cause which misrepresents either the

existence of the informant or the information conveyed by the informant; that without the informant's information there would not have been probable cause; and that production of the informant is the only way in which the defendant can substantiate his claim.

***Commonwealth v. Bonasorte***, 486 A.2d 1361, 1374 (Pa. 1984).

Here, the trial court summarized the evidence elicited at the evidentiary hearing on Turner's motion as follows:

[T]he instant matters, which were charged by way of three separate Criminal Informations, involved three distinct alleged drug transactions between [Turner] and a [CI]. The first transaction was alleged to have occurred on April 29, 2016 at 1360 Columbia Avenue, Lancaster City, Lancaster County, Pennsylvania. The second transaction was alleged to have occurred on May 12, 2016 in the parking lot of the Edward Hand Middle School, located at 431 South Ann Street, Lancaster City, Lancaster County, Pennsylvania. The final transaction was alleged to have occurred on June 2, 2016 at 653 Columbia Avenue, Lancaster City, Lancaster County, Pennsylvania. At the evidentiary hearing, [Turner] acknowledged that the Commonwealth alleged that an undercover law enforcement officer was near the scene of each suspected transaction. As such, the matters at bar involve more [of] an isolated incident, or a single opportunity for the investigating law enforcement officers to view the perpetrator. Rather, the instant matters involve three separate criminal transactions occurring over thirty-four days.

Additionally, at the evidentiary hearing, the Commonwealth established the existence of a great deal of circumstantial evidence which would corroborate the testimony of the investigating law enforcement officers at trial. Specifically, [Turner] acknowledged that he was aware that the [CI] was dealing with an individual, who[] was known by the nickname of "Pop[.]" The Commonwealth established, by the introduction of numerous postings from [Turner's] Facebook page, that many people referred to [Turner] as "Pop[.]" [Turner] also conceded that his wife owns a green Nissan Altima automobile and that said automobile was alleged to have been used by the suspect in two of the instant drug transactions. [Turner], further, acknowledged that he resides with his mother-in-law, who owns a Jaguar vehicle,

and that such automobile was alleged to have been used by the suspect in the other alleged drug transaction. Finally, [Turner] acknowledged that he was aware that one of the transactions was alleged to have occurred in the parking lot of the Edward Hand Middle School and that, during such transaction, the suspect indicated that he was a coach at the facility. During his testimony, [Turner] admitted that he was involved in coaching youth athletics at the school. As such, notwithstanding the limited evidence presented at the evidentiary hearing, the Commonwealth demonstrated the existence of ample evidence to corroborate the testimony of any investigating law enforcement officers at trial in this matter.

Trial Court Opinion, at 8-9 (citations to record omitted).

We agree with the trial court that Turner failed to demonstrate that the testimony of the CI was material to his defense in light of the substantial evidence corroborating the multiple eyewitness identifications by Officer Snader. That corroborating evidence distinguishes this matter from **Payne**. There,

an undercover Pennsylvania State Police Officer and a [CI], investigating drug activity, saw Appellant and a female standing on a corner. The [CI] pointed out or "fingered" Appellant and then went to Appellant and spoke to him. On returning to the trooper's vehicle, the [CI] told the trooper that they could make a drug purchase from Appellant. Appellant and the woman drove off to another location, followed by the police vehicle. A back-up police vehicle apparently followed but was not further involved in the ensuing drug purchase. After dropping off the Appellant, the woman departed in her car. The trooper and the [CI] followed the Appellant on foot between two buildings where the trooper in the informant's presence paid the Appellant for 7.4 grams of cocaine. The so-called informant was now clearly a witness to the crime as well. This transaction took place on May 11, 1990, but the Appellant was not arrested until December 10 of that year. Neither the officer nor any other police had any contact with the Appellant in the interim, although the officer said he saw Appellant in the area on several later occasions.

*Payne*, 656 A.2d at 77–78. The foregoing scenario represented the totality of the Commonwealth's identification evidence. At trial, Payne raised a defense of mistaken identity. The trial court denied Payne's motion, and this Court affirmed. The Supreme Court reversed. In doing so, it relied upon its earlier decision in *Commonwealth v. Carter*, 233 A.2d 284 (Pa. 1967). There, the Court

> accepted the government's privilege of non-disclosure but ruled that the privilege must give way where disclosure of an eyewitness's identity is relevant and helpful to the defense or is necessary to a fair determination of a cause. . . . We further held that the proper balance between the prosecution and defense necessarily must tip in favor of disclosure where guilt is based solely on a single observation by the police but testimony from a "more disinterested source is available." Where other corroboration of the officer's testimony exists, disclosure of the informant's identity is, of course, not necessarily required.

*Payne*, 656 A.2d at 79. Because the sole evidence of identity in *Payne* was the testimony of a single observation by one police officer, and because the criminal information was not filed for another seven months after the undercover buy, the Court held that disclosure was warranted in light of the defendant's claim of mistaken identity.

Conversely, here, Officer Snader observed three separate transactions over a period of more than one month. More significantly, Officer Snader's eyewitness identification of Turner was bolstered by substantial corroborative information, thus minimizing the likelihood that Turner was incorrectly identified as the person who repeatedly sold drugs to the CI. Specifically, the CI told Officer Snader he knew Turner as "Pop," a name by which people

referred to Turner on his own Facebook page and which Turner conceded was a name by which people called him.[4]  Additionally, at the first and third

_____

[4] The following exchange took place during Turner's cross-examination at the motion hearing:

Q:  Okay.  You say your nickname is not Pop?

A:  My name is Rhamin Turner.  My grandkids call me Pop-Pop.

Q:  **Do you have anyone that calls you Pop?**

A:  **No.**

Q:  Do you have a Facebook page, sir?

A:  Yes, I do.

Q:  And what's your name on your Facebook page?

A:  Rhamin Turner, Sr.

Q:  And who is Elizabeth Louis?

A:  I don't know.

Q:  She's friends with you on Facebook?

A:  Probably, yeah.

Q:  You know her family?

A:  Yes.

Q:  Does she call you Pop?

A:  Probably. I don't know.

Q:  What about Darryl Wiley, who's Darryl Wiley?

A:  A Facebook friend.

Q:  Does he call you Pop?

A:  Probably.

transactions, on April 29, 2016, and June 2, 2016, the person who sold drugs to the CI was driving a green Nissan Altima—the same make, model and color as a car owned by Turner's wife. On the date of the third transaction, May 12, 2016, the person who sold the CI drugs was driving a silver Jaguar XJ8, the same make, model and color as a car owned by Turner's mother-in-law, with whom Turner resided. Finally, the May 12, 2016 sale took place in the parking lot of a middle school where Turner testified that he coached sports. During that sale, "Pop" mentioned to the CI that he was a coach at that school.

_____

. . .

Q: Sir, I've handed you what's been marked Commonwealth's Exhibit 1. Do you recognize that photograph?

A: Yes, I do.

Q: And what is that photograph of?

A: Of me coming out of Planet Fitness like four years ago.

Q: Okay. And are there comments on the side of that photograph?

A: Yes, it is.

Q: Is there a comment from Elizabeth Louis calling you Pop?

A: Yeah.

Q: Is there a comment from Darryl Wiley calling you Pop?

A: Yes.

Q: **So people do call you Pop?**

A: **Yeah, I guess, yes.**

N.T. Motion Hearing, 9/14/17, at 14-16 (emphasis added).

In light of the foregoing, we conclude that the information gathered by police to corroborate Officer Snader's eyewitness identification of Turner mitigated the risk of misidentification such that the trial court could reasonably conclude that production of the CI was not required under **Carter** and **Payne**. Accordingly, we find no abuse of discretion by the trial court.

Turner also claims that the evidence presented by the Commonwealth was insufficient to support his convictions.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Matthews**, 196 A.3d 242, 249 (Pa. Super. 2018), quoting **Commonwealth v. Brooks**, 7 A.3d 852, 856-57 (Pa. Super. 2010) (citations omitted).

- 10 -

We have reviewed the certified record, the pertinent law, and the Appellant's brief[5] and conclude that the opinion authored by the Honorable Merrill M. Spahn, Jr., thoroughly and correctly disposes of Turner's sufficiency claim. Accordingly, we affirm on the basis of Judge Spahn's opinion and instruct the parties to attach a copy of that document in the event of further proceedings in this matter.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/01/2019

---

[5] The Commonwealth did not submit a brief in this matter, instead opting to rely on the trial court's opinion.

2. Opinion

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA

|  | Nos. | CP-36-CR-0000496-2017 |
|---|---|---|
| vs. | : | CP-36-CR-0000937-2017 |
|  | : | CP-36-CR-0001044-2017 |
| RHAMIN TURNER | : |  |

## OPINION PURSUANT TO RULE 1925(a) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

BY: SPAHN, JR., J.

Defendant has filed a timely direct appeal to the Superior Court of Pennsylvania in the above-captioned matters raising allegations that the trial court erred in denying Defendant's request for the pre-trial production of the identity of the confidential informant utilized by the Commonwealth in these matters and pertaining to the sufficiency of evidence presented at trial. Said claims will be thoroughly addressed herein.

**Factual/Procedural Background**

By Criminal Information docketed to Number CP-36-CR-0000496-2017, Defendant was charged with allegedly having committed the offenses of Delivery of a Controlled Substance (Cocaine)[1] and Criminal Use of a Communication Facility[2]. Said charges stem from an alleged delivery of cocaine between Defendant and a confidential informant on June 2, 2016, at 653 Columbia Avenue, Lancaster City, Lancaster County, Pennsylvania.

---

[1] 35 Pa.C.S.A.§ 780-113(a)(30).
[2] 18 Pa.C.S.A.§ 7512(a).

By Criminal Information docketed to Number CP-36-CR-0000937-2017, Defendant was charged with allegedly having committed the offenses of Delivery of a Controlled Substance (Cocaine)[3] and Criminal Use of a Communication Facility[4]. Said charges stem from an alleged delivery of cocaine between Defendant and a confidential informant on May 12, 2016, at 431 South Ann Street, Lancaster City, Lancaster County, Pennsylvania. Said transaction is alleged to have occurred in the parking lot of the Edward Hand Middle School of the School District of Lancaster.

By Criminal Information docketed to Number CP-36-CR-0001044-2017, Defendant was charged with allegedly having committed the offenses of Delivery of a Controlled Substance (Cocaine)[5], Criminal Use of a Communication Facility[6], and Driving Under Suspension[7]. Said charges stem from an alleged delivery of cocaine between Defendant and a confidential informant on April 29, 2016, at 1360 Columbia Avenue, Lancaster City, Lancaster County, Pennsylvania.

On August 29, 2017, Defendant, through counsel, filed a Motion to Compel Production of the Confidential Informant and Video Recording the Alleged Transaction (sic). By order dated the following day, the court directed the attorney for the Commonwealth to provide a written answer thereto within ten days. On September 5, 2017, the attorney for the Commonwealth filed such answer. By order dated September 6, 2017, the court scheduled an evidentiary hearing and oral argument relative to such motion for September 14, 2017.

---

[3] 35 Pa.C.S.A.§ 780-113(a)(30).
[4] 18 Pa.C.S.A.§ 7512(a).
[5] 35 Pa.C.S.A.§ 780-113(a)(30).
[6] 18 Pa.C.S.A.§ 7512(a).
[7] 75 Pa.C.S.A.§ 1543(a).

Following said hearing, on September 15, 2017, the court denied Defendant's motion in this regard.

On October 23, 2017, Defendant proceeded to trial before the below-signed member of this court and a jury. The following day, Defendant was found guilty of all charged offenses. The court deferred sentencing pending the completion of a pre-sentence investigation report. Sentencing in these matters was initially scheduled for January 4, 2018; however, sentencing was delayed on several occasions due to the unavailability of counsel for Defendant.[8]

On April 19, 2018, Defendant appeared before this court for sentencing in the instant matters. At such time, Defendant was sentenced as follows:

Information Number CP-36-CR-0000496-2017

    Count One – Delivery of Cocaine

        -not less than fifteen months nor more than thirty months incarceration in the state correctional system and the costs of prosecution.

    Count Two – Criminal Use of a Communication Facility

        -not less than fifteen months nor more than thirty months incarceration in the state correctional system, concurrent with count one, and the costs of prosecution.

Information Number CP-36-CR-0000937-2017

    Count One – Delivery of Cocaine

        -not less than three years nor more than six years incarceration in the state correctional system and the costs of prosecution.

    Count Two - Criminal Use of a Communication Facility

---

[8] It is noted that Defendant was represented in all pre-trial matters and at trial by Michael Marinaro, Esquire. On January 3, 2018, Jack McMahon, Esquire, entered his appearance to represent Defendant in any further proceedings.

-not less than fifteen months nor more than thirty months incarceration in the state correctional system, concurrent with count one, and the costs of prosecution.

Information Number CP-36-CR-0001044-2017

Count One – Delivery of Cocaine

-not less than fifteen months nor more than thirty months incarceration in the state correctional system and the costs of prosecution.

Count Two – Criminal Use of a Communication Facility

-not less than fifteen months nor more than thirty months incarceration in the state correctional system, concurrent with count one, and the costs of prosecution.

Count Three – Driving Under Suspension

-thirty days incarceration, concurrent with count one, a one-thousand dollar fine, and the costs of prosecution.

The sentences on each Criminal Information were imposed consecutively. As such, Defendant received a net sentence of incarceration of not less than five and one-half years nor more than eleven years. The defendant was eligible for participation in the Recidivism Risk Reduction Incentive program. As such, the court set the appropriate date of fifty-five months.

On April 30, 2018, Defendant filed a timely Notice of Appeal in all matters to the Superior Court of Pennsylvania. By order dated on or about May 1, 2018, Defendant was directed to file a Statement of Errors Complained of on Appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. Defendant filed such statement in all matters on May 17, 2018, raising identical claims in all matters. The Commonwealth has not filed an Answer thereto. As such, these matters are ripe for review.[9]

---

[9] All facts relative to disposition of Defendant's claims will be further addressed herein.

## Discussion

Defendant's initial allegation of error pertains to the trial court's denial of his pre-trial request for production of the identity of the confidential informant utilized by the Commonwealth in the instant matters. Defendant presently contends that the decision of the trial court was a significant hindrance to his defense at trial and denied him his constitutional guarantees to confront witnesses against him and the ability to compel the appearance of witnesses at trial.

The Pennsylvania Superior Court has repeatedly held that the standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion. Commonwealth v. Watson, 69 A.3d 605, 607 (Pa. Super. 2013); Commonwealth v. Washington, 63 A.3d 797, 801 (Pa. Super. 2013).

Rule 573(B) of the Pennsylvania Rules of Criminal Procedure provides a trial court with discretion to require the Commonwealth to provide the names of eyewitnesses upon a showing that such information is material to the preparation of the defense and that the request for such information is reasonable. Pa.R.Crim.P. 573(B)(2)(a)(i). As such, the defendant seeking disclosure of such information must first establish the materiality and reasonableness of the request.

Pennsylvania jurisprudence has long recognized that when the eyewitness is a confidential informant there exists a "qualified privilege to preserve the informant's confidentiality in order to protect the flow of information from informants and thereby maintain the public's interest in effective law enforcement." Commonwealth v. Roebuck, 681 A.2d 1279,

5

1282-83 (Pa. 1996). The privilege is not absolute, however, and must give way under the appropriate circumstances.

When moving for disclosure, the defendant must first establish that the identity of the confidential informant is material to the defense and that such request is reasonable in nature. Interest of D.B., 820 A.2d 820, 822 (Pa. Super. 2003). If the defendant satisfies this burden, then the trial court must apply a balancing test, with "the balance initially weigh[ing] in favor of maintaining confidentiality of the informant's identity in order to preserve the public's interest in effective law enforcement." Commonwealth v. McCulligan, 905 A.2d 983, 989 (Pa. Super. 2006). The trial court may not exercise its discretion to determine whether disclosure is required until the defendant makes the threshold showing of materiality and reasonableness. Commonwealth v. Jordan, 125 A.3d 55. 63 (Pa. Super. 2015)(en banc).

Regarding the threshold inquiry of materiality and reasonableness, the Pennsylvania Superior Court has held,

> …the defendant need not predict exactly what the informant will say, but he must demonstrate a reasonable possibility the informant could give evidence that would exonerate him. More than a mere assertion that disclosure of the informant's identity might be helpful is necessary. Only after this threshold showing that the information is material and the request reasonable is the trial court called upon to determine whether the information is to be revealed.

Commonwealth v. Belenky, 777 A.2d 483, 488 (Pa. Super. 2001).

"[T]he defendant must lay an evidentiary basis or foundation that the confidential informant possesses relevant information that will materially aid the defendant in presenting his or her defense and that the information is not obtainable from another source." Commonwealth v. Hritz, 663 A.2d 775, 780 (Pa. Super. 1995). See, Commonwealth v. Eicher, 605 A.2d 337, 348 (Pa. Super. 1992) (appellant seeking disclosure of informant must have "concrete evidence"

6

corroborating defense theory "other than his own self-serving allegations"; absent "more specific evidence", the trial court is not required to compel disclosure and allow the defense to conduct a fishing expedition). Only if the defendant makes this threshold showing must a trial court weigh the competing interests to determine whether the informant's identity should be revealed. Commonwealth v. Marsh, 997 A.2d 318, 322 (Pa. 2010) (plurality); Commonwealth v. Bing, 713 A.2d 56, 58 (Pa. 1998); Commonwealth v. Belenky, 777 A.2d at 488. Said principles were first set forth by the United States Supreme Court in Roviaro v. United States, 353 U.S. 53 (1957).

As a plurality of our Supreme Court held in Commonwealth v. Marsh, 997 A.2d 318 (Pa. 2010), there can be no fixed rule regarding whether disclosure must occur. "Rather the determination must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors. Marsh, 997 A.2d at 322-23.

As noted by the Pennsylvania Superior Court in Commonwealth v. Jordan, supra, if the defendant makes the threshold showing,

> then the courts must balance the public interest in the police's ability to obtain information against the defendant's right to prepare his defense. In this connection, we consider the crime, the potential defense, and the significance of the [confidential informant's] testimony. The scales tip in favor of disclosure if the Commonwealth will be relying on police testimony based on a single observation. If other proof corroborates a police officer's testimony, disclosure is not mandated. Furthermore, the safety of the confidential informant can be a controlling factor in determining whether to reveal a source's identity.

Jordan, 125 A.3d at 63.

While noting that counsel for the parties established a minimal record at the evidentiary hearing held in these matters before the court on September 14, 2017, this court found, for the following reasons, that Defendant failed to establish his threshold burden of demonstrating that

7

disclosure of the informant's identity was material. It is specifically noted that Defendant, is his pre-trial motion and testimony at the evidentiary hearing, made a bare assertion of mistaken identity. Defendant failed to present any other evidence or argument suggestive of a reasonable possibility that disclosure of the informant's identity would be helpful. Said bare allegation is insufficient for Defendant to carry his burden when viewed considering the other evidence presented by the matters at bar.

At the evidentiary hearing, the Commonwealth established the instant matters, which were charged by way of three separate Criminal Informations, involved three distinct alleged drug transactions between Defendant and a confidential informant. The first transaction was alleged to have occurred on April 29, 2016 at 1360 Columbia Avenue, Lancaster City, Lancaster County, Pennsylvania. (N.T. Evid. Hrg., p. 8). The second transaction was alleged to have occurred on May 12, 2016 in the parking lot of the Edward Hand Middle School, located at 431 South Ann Street, Lancaster City, Lancaster County, Pennsylvania. (N.T. Evid. Hrg., p. 7). The final transaction was alleged to have occurred on June 2, 2016 at 653 Columbia Avenue, Lancaster City, Lancaster County, Pennsylvania. (N.T. Evid. Hrg., pgs. 5-7). At the evidentiary hearing, Defendant acknowledged that the Commonwealth alleged that an undercover law enforcement officer was near the scene of each suspected transaction. (N.T. Evid. Hrg., p. 8). As such, the matters at bar involve more an isolated incident, or a single opportunity for the investigating law enforcement officers to view the perpetrator. Rather, the instant matters involve three separate criminal transactions occurring over thirty-four days.

Additionally, at the evidentiary hearing, the Commonwealth established the existence of a great deal of circumstantial evidence which would corroborate the testimony of the investigating law enforcement officers at trial. Specifically, Defendant acknowledged that he

was aware that the confidential informant was dealing with an individual, whom was known by the nickname of "Pop". (N.T. Evid. Hrg., p. 16). The Commonwealth established, by the introduction of numerous postings from the defendant's Facebook page, that many people referred to the defendant as "Pop". (N.T. Evid. Hrg., pgs. 14-16). Defendant also conceded that his wife owns a green Nissan Altima automobile and that said automobile was alleged to have been used by the suspect in two of the instant drug transactions. (N.T. Evid. Hrg., p 13). Defendant, further, acknowledged that he resides with his mother-in-law, who owns a Jaguar vehicle, and that such automobile was alleged to have been used by the suspect in the other alleged drug transaction. (N.T. Evid. Hrg., pgs. 13-14). Finally, Defendant acknowledged that he was aware that one of the transactions was alleged to have occurred in the parking lot of the Edward Hand Middle School and that, during such transaction, the suspect indicated that he was a coach at the facility. During his testimony, Defendant admitted that he was involved in coaching youth athletics at the school. (N.T. Evid. Hrg., p. 16-17). As such, notwithstanding the limited evidence presented at the evidentiary hearing, the Commonwealth demonstrated the existence of ample evidence to corroborate the testimony of any investigating law enforcement officers at trial in this matter.

Moreover, even had Defendant met his threshold burden of establishing that disclosure of the informant's identity was material and reasonable, the same problems, when applied in the balancing test noted above, would militate in favor of nondisclosure. First, the fact that Defendant was observed on multiple occasions undercuts the need for disclosure. In Bing, supra, our Supreme Court explained, "In all prior cases in which this Court has required the identity of an eyewitness informant to be revealed, the guilt of the defendant was established solely through the testimony of police officers who had viewed the defendant only a single time, or through the

uncorroborated testimony of a single officer." 713 A.2d at 58. Further, in <u>Bing, supra,</u> our Supreme Court observed that the need for disclosure is greater when dealing with a single incident, due to the risk of misidentification:

> [N]umerous viewings substantially undermine the need for disclosure of the identity of the confidential informant on the ground of misidentification. Thus, the risk of misidentification that was present in <u>Payne, Carter,</u> and <u>Roebuck,</u> is not present in the instant case. The fact that there were numerous observations of the seller, although not legally determinative, weighs in favor of maintaining the Commonwealth's privilege.

<u>Bing,</u> 713 A.2d at 59-60. Hence, the reliability of the identifications is linked to the need to disclose. <u>Bing,</u> 713 A.2d at 59, n.5.

Based upon the factual background as discussed above, the Commonwealth in this matter was not relying solely upon a single transaction, nor was it relying upon the uncorroborated testimony of a single law enforcement officer. Rather, the Commonwealth alleged that Defendant participated in three separate drug transactions occurring over a thirty-four-day period. The transactions, which occurred between Defendant and a confidential informant, were observed by a nearby law enforcement officer. Thus, law enforcement personnel had three distinct opportunities to observe the defendant. Additionally, the Commonwealth is not relying upon the uncorroborated testimony of a single law enforcement officer. Rather, as noted above, the Commonwealth possessed a great deal of circumstantial evidence to corroborate the testimony of the law enforcement officers. As such, the Commonwealth did not need to present the testimony of the confidential informant to sustain convictions in the instant matters.

Accordingly, for the foregoing reasons, this court firmly believes that it did not abuse its discretion in denying Defendant's request for disclosure of the identity of the confidential informant utilized by the Commonwealth in this matter.

10

Defendant's next allegation of error pertains to his claim that the evidence presented at trial was insufficient as a matter of law to sustain his convictions of Delivery of a Controlled Substance (Cocaine).[10] Specifically, Defendant's contentions can be summarized as follows: there was no identification of him by the police; the Commonwealth failed to present the testimony of the confidential informant; the investigating law enforcement officers failed to search Defendant's home; the Commonwealth did not produce any recordings or photographs of the drug transactions; the Commonwealth failed to present any scientific evidence, such as fingerprints or DNA analysis; and, the Commonwealth failed to recover any pre-recorded buy money used in the involved drug transactions.

In reviewing Defendant's challenges to the sufficiency of the evidence, the appellate court need view the evidence produced at trial in the light most favorable to the Commonwealth as verdict winner to determine if it is sufficient to allow a reasonable jury to find each element of the offense charged beyond a reasonable doubt. Commonwealth v. Slocum, 86 A.3d 272, 275 (Pa. Super. 2014).

> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

Id.

For Defendant to prevail on his claim that the evidence is insufficient, it must be said that accepting all of the evidence and all reasonable inferences drawn from the evidence upon which,

---

[10] The court notes that, in his Concise Statement of Matters on Appeal filed on May 17, 2018, Defendant fails to provide specific reference to the precise charge(s) at issue. Rather, defense counsel simply refers to the offenses as "relevant drug sale". As such, this court assumes that Defendant is referring to the offenses of Delivery of a Controlled Substance (Cocaine).

11

if believed, the verdict could properly have been based, that the evidence would be insufficient in law to find beyond a reasonable doubt that he is guilty of the crime charged. Commonwealth v. Meadows, 369 A.2d 1266, 1268 (Pa. 1977); Commonwealth v. Quel, 27 A.3d 1033, 1037-38 (Pa. Super. 2011). It is axiomatic that "[b]eyond a reasonable doubt" has never been construed to equate to "beyond all doubt." See, e.g., Commonwealth v. Jones, 858 A.2d 1198, 1201-04 (Pa. Super. 2004).

To convict a defendant of the offense of Delivery of a Controlled Substance, the Commonwealth must prove beyond a reasonable doubt that the defendant delivered a controlled substance to another individual. Pa.S.S.J.I. (Crim.) 16.13(a)(30)B. In the present matter, Defendant did not raise any claims as to authorization or challenges to the substance as constituting cocaine.

At trial, the Commonwealth presented the testimony of Jared Snader, a police officer whom has been employed by the Lancaster City Bureau of Police for ten years and assigned to the Selective Enforcement Unit for three years. (N.T. October 24, 2017, p. 62). Officer Snader testified that he: has been involved in over 1,500 drug investigations; has attended numerous classes regarding drug investigations, including the police academy; has been involved in approximately 125 direct purchases of narcotics as an undercover police officer; has supervised many informants that were making purchases and observed them; and, was involved in numerous informant debriefs. (N.T. October 24, 2017, pp. 62-63). Officer Snader explained the buy-walk detail used by the Selective Enforcement Unit, whereby an undercover police officer and an informant, working under the direction of an undercover police officer, go to various areas in Lancaster to attempt to purchase controlled substances from people. (N.T. October 24, 2017, p. 63). After a purchase is made, the suspect in the investigation would not be stopped; rather, the

suspect would be allowed to walk away. (N.T. October 24, 2017, p. 64). The Selective Enforcement Unit would then employ various means to identify the suspect. (Id.) Officer Snader explained the entire process of a typical buy-walk detail. (N.T. October 24, 2017, pp. 64-67).

Officer Snader was involved in the investigation in this matter from April through June of 2016 that led to the charges filed against Defendant. (N.T. October 24, 2017, p. 67). Officer Snader was the undercover officer working with the confidential informant used during the investigation. (Id.) On the date of the first purchase, April 29, 2016, Officer Snader was the undercover officer who was not in a police car and was wearing plain clothes. (N.T. October 24, 2017, p. 71). Officer Snader had an informant with him whom had been searched by Officer Hagy and was with Officer Snader in his vehicle. Id. The informant notified Officer Snader that he could contact a person known as "Pop" at the telephone number, 717-421-3219. (Id.) The informant called this person in the presence of Officer Snader, and the phone call was placed on speaker phone so that Officer Snader could hear the conversation. (Id.) During the conversation, a deal was set up for the Giant Store located in Stone Mill Plaza. (Id.) Upon arriving at the Giant Store, the informant placed another call to "Pop" to advise him that they had arrived. (Id.) A few minutes later, a green Nissan Ultima (sic) bearing license plate JHM 1893 arrived and parked four or five spaces away from Officer Snader's vehicle. (Id.) Officer Snader provide the confidential informant with $60.00 and the confidential informant immediately exited his vehicle and proceeded to the front passenger side of the Nissan Ultima (sic) and entered that vehicle for a short period. (N.T. October 24, 2017, p. 72). After the confidential informant exited the Nissan Ultima (sic), he came back to Officer Snader's vehicle and immediately turned over one clear corner tied bag contained crack cocaine. (Id.). Officer Snader immediately left the area

13

and, as he was leaving, he observed the person in the Ultima (sic) walking toward the entrance of the Giant. (Id.). Accordingly, Officer Snader drove past the person again and got a clear look at this person as he was leaving the area. (Id.). Officer Snader met the primary surveillance officer, Officer Hagy, and turned over the purchased crack cocaine. (N.T. October 24, 2017, pp. 73-74). Officer Snader then identified the substance as crack cocaine and explained the process by which the evidence was secured. (N.T. October 24, 2017, pp. 74-75). At the conclusion of the investigation, Officer Snader was shown a picture of Defendant, whom Officer Snader recognized as the person that arrived in the green Nissan Ultima (sic) and sold the crack to the informant. (N.T. October 24, 2017, p. 77). Officer Snader was also able to identify the owner of the green Nissan Ultima (sic) as Thamar Tayler, the wife of Defendant, residing at 1203 Elm Avenue, which is also the address of Defendant. (N.T. October 24, 2017, pp. 77-78).

On May 12, 2016, Officer Snader was also working undercover and the same set up and procedures were utilized for another buy-walk detail. (N.T. October 24, 2017, pp. 80-81). After the confidential informant was searched, he entered Officer Snader's vehicle and placed a phone call to the same number to "Pop" again. (N.T. October 24, 2017, p. 82). The phone call was on speaker phone so that Officer Snader could hear the conversation and a deal for the informant to purchase $60 of crack was set up at Edward Hand Middle School. (Id.). Officer Snader and the informant traveled to Hand Middle School and parked on the Juniata Street parking lot, essentially right up against the school. (N.T. October 24, 2017, pp. 82-83). Upon arrival, Officer Snader noted a silver Jaguar XJ8 parked in the parking lot. (N.T. October 24, 2017, p. 83). Officer Snader parked two spaces away from the Jaguar. (Id.). Officer Snader identified the driver of the Jaguar as Defendant. (Id.). Defendant walked up to the front passenger window of Officer Snader's vehicle and the confidential informant gave Defendant $60.00, which Officer

14

Snader had previously provided to the confidential informant, and Defendant handed the confidential informant a red Solo cup with a balled-up napkin inside, which had a clear corner tied back of crack in it. (Id.). At that time, Defendant also mentioned that he was a coach at the school. (Id.). The informant turned the red Solo cup over to Officer Snader as they were leaving the area. (N.T. October 24, 2017, p. 84). Officer Snader turned the evidence over to Officer Reich. (Id.). Officer Snader testified that the item handed to him was crack cocaine. (Id.). Officer Snader determined that the Jaguar XJ8 sedan that Defendant was standing near was owned by Donna Broadnax, Defendant's mother-in-law. (N.T. October 24, 2017, p. 86).

On June 2, 2016, Officer Snader was working as an undercover officer and the same set up procedure was performed for another buy-walk deal. (N.T. October 24, 2017, p. 87). After the informant arrived and was searched, he entered Officer Snader's vehicle and placed a phone call to "Pop" at the same phone number as the previous two times. (Id.). A deal was set up to occur at the Gas Mart at the intersection of Columbia Avenue and Orange Street for the informant to purchase $60.00 worth of crack cocaine. (Id.). After parking in the lot, Officer Snader observed a green Nissan Ultima (sic) arrive. (N.T. October 24, 2017, p. 88). Defendant was the driver and only occupant of said vehicle. (Id.). Officer Snader provided the informant with $60.00 of buy money, at which time the informant left Officer Snader's vehicle and walked directly to the driver window of the Ultima (sic) where Defendant was sitting. (Id.). Officer Snader observed the informant reach toward Defendant's vehicle and, after a few seconds, the informant broke contact with Defendant, re-entered Officer Snader's vehicle and turned over one clear corner tied bag containing crack. (N.T. October 24, 2017, pp. 88-89). Officer Snader turned the bag over to Officer Reich and noted that the substance appeared to be crack cocaine. (N.T. October 24, 2017, p. 89). At the conclusion of the investigation, Officer Snader reviewed

15

a photograph of Defendant and recognized him as the person who sold the crack cocaine to the informant on the first, second and third buy. (N.T. October 24, 2017, p. 90).

The court notes that Officer Snader was present on a subsequent occasion when Defendant was asked whether he goes by the nickname, "Pop", and he said he did not, but that his grandchildren referred to him as "Pop Pop." (N.T. October 24, 2017, p. 91). After being confronted with a Facebook photo where different people called him "Pop", Defendant admitted that some people do call him "Pop." (Id.). Defendant confirmed that the Facebook photo was from his Facebook page and that it was him. (Id.). Defendant also confirmed that he drives the car that is registered to his wife. (N.T. October 24, 2017, pp. 92-93). Defendant admitted that he was a coach at Hand Middle School. (N.T. October 24, 2017, p. 93).

Andrew Mease has been employed as a police officer with the Lancaster City Bureau of Police for fifteen years assigned to the Selective Enforcement Unit for the past six years. (N.T. October 24, 2017, pp. 131-132). Officer Mease was involved in the detail on April 29, 2016 as a third surveillance officer to observe the undercover officer and possibly the transaction as it occurs. (N.T. October 24, 2017, p. 132). Officer Mease observed the confidential informant leave the undercover vehicle and approach a vehicle, interact with a subject in the car and return to the undercover vehicle. (Id.). Officer Mease recalled that the vehicle was green in color. (N.T. October 24, 2017., p. 133). Officer Mease also observed Defendant exit the green Nissan Ultima (sic) and walk toward the Giant Store. (N.T. October 24, 2017, pp. 133-134).

Christy Bruno is a forensic scientist employed with the Pennsylvania State Police since 2007. (N.T. October 25, 2017, pp. 142-143). She identified the contents of the sealed envelopes containing the substances purchased in this matter as cocaine. (N.T. October 25, 2017, pp. 146-152).

16

Jason Hagy has been employed as a police officer with the Lancaster City Police since 2009. (N.T. October 25, 2017, p. 161). He has been involved with the Selective Enforcement Unit since January 2014. (Id.). He has been involved in several drug investigations and received various training in such investigations. (Id.). Officer Hagy was involved in the April 29, 2016 buy-walk operation as the primary surveillance officer. (N.T. October 25, 2017, pp. 162-163). He was involved in searching the confidential informant and placing him in the vehicle with Officer Snader. (N.T. October 25, 2017, p. 163). Officer Hagy followed Officer Snader to the location of the purchase. (N.T. October 25, 2017, p. 164). Officer Hagy was listening to a wire transmission that was not recorded since it was picking up conversations between Officer Snader and the confidential informant and not the alleged dealer. (N.T. October 25, 2017, p. 165). Officer Hagy observed a green color Nissan Ultima (sic) with the first four characters of JGI in the registration arrive. (N.T. October 25, 2017, pp. 165-166). Officer Hagy met the confidential informant after the purchase, obtains the drugs, and secured the drugs in a sealed envelope. (N.T. October 25, 2017, p. 166). Officer Hagy was involved in the second drug purchase on May 12, 2016. (N.T. October 25, 2017, p. 169). He was also operating the wire at that time, but he did not handle any evidence. (N.T. October 25, 2017, pp. 169-170). Officer Hagy was also involved in the third drug purchase on June 2, 2016 as the secondary surveillance officer. (N.T. October 25, 2017, p. 170). Officer Hagy observed a green Nissan Ultima (sic) pull up, and he observed the confidential informant exit the vehicle and make brief contact with the driver's side of the green Nissan Ultima (sic). (N.T. October 25, 2017, p. 171). Officer Hagy described the individual that the confidential informant made contact with as a black male with a beard and bald head. (Id.). Defendant was the sole occupant of the green Nissan Ultima (sic). (N.T. October 25, 2017, p. 172). Officer Hagy observed the informant return to the undercover

17

vehicle. (Id.). Officer Hagy field tested the substance and confirmed it was cocaine. (N.T. October 25, 2017, pp. 172-173).

Steve Reich has been employed as a police sergeant with the Lancaster City Police for ten years. (N.T. October 25, 2017, p. 186). He was assigned to the Selective Enforcement Unit from April through June 2016. (N.T. October 25, 2017, pp. 186-187). Sergeant Reich was the secondary surveillance on April 29, 2016. (N.T. October 25, 2017, p. 187). He observed Defendant arrive in a green Nissan Ultima (sic) to the location of the buy. (N.T. October 25, 2017, pp. 187-188). He further observed the confidential informant exit the undercover officer's vehicle, approach Defendant's vehicle, engage in a short encounter with Defendant, and then come back to the undercover vehicle. (N.T. October 25, 2017, p. 188). Sergeant Reich described a black male with a bald head and beard exit the vehicle and walk into the Giant Store. (Id.). Inasmuch as Sergeant Reich already obtained previous information that the subject vehicle was registered to an owner residing at 1203 Elm Avenue, he drove to that location, which was two blocks from the Giant Store. (N.T. October 25, 2017, p. 189). When Sergeant Reich arrived at the residence, he observed that the subject vehicle was parked two houses west of the address and there was no one inside the vehicle. (Id.). Sergeant Reich came into contact with a Manheim Township police officer who ran the address through a general database and determined that it was Defendant's residence. (N.T. October 25, 2017, p. 190). Therefore, once Sergeant Reich obtained Defendant's name and date of birth, he was able to produce a photograph of Defendant, which he showed to Officer Snader, who was quick to identify Defendant from the buy. (Id.).

Sergeant Reich was the primary surveillance for the buy-walk detail on May 12, 2016. (Id.). He searched the confidential informant and traveled separately to the buy location at Hand

18

Middle School. (N.T. October 25, 2017, p. 191). Although Sergeant Reich remained at a distance, he was able to see Defendant in a silver Jaguar; he was able to see the confidential informant make contact with Defendant; and, then he was able to see the confidential informant return to the undercover vehicle. (N.T. October 25, 2017, pp. 191-192). Officer Snader turned the substance over to Sergeant Reich, after the confidential informant turned it over to Officer Snader. (N.T. October 25, 2017, pp. 192-193). Sergeant Reich then packaged the substance into an envelope. (N.T. October 25, 2017, p. 193).

During the third buy-walk detail on June 2, 2016, Sergeant Reich was the primary surveillance; however, he did not personally observe the deal. (N.T. October 25, 2017, p. 194). Subsequent to the buy, Sergeant Reich met Officer Snader and obtained the drugs, searched the confidential informant, and processed the drugs. (Id.).

Thamar Taylor Turner, wife of Defendant, testified on behalf of Defendant. (N.T. October 25, 2017, pp. 208-209). She testified that she owns a Nissan Ultima (sic), among other vehicles, and her mother owns a Jaguar. (N.T. October 25, 2017, p. 210). She testified that anyone living in the household could operate the Nissan Ultima (sic), including Defendant; Defendant's 26-year-old son; her 17-year-old son; and, any uncle or cousin who is visiting. (N.T. October 25, 2017, pp. 210-211). She also testified that she, Defendant, her step-son, and her daughter can drive her mother's Jaguar. (N.T. October 25, 2017, p. 211).

Defendant testified that his son, who he previously failed to mention lived with him, also drives the green vehicle and Jaguar. (N.T. October 25, 2017, p. 214). Defendant denied ever selling any drugs. (N.T. October 25, 2017, p. 214). Defendant denied being in the location of any of the drug purchases. (N.T. October 25, 2017, pp. 214-215). Defendant testified that he did coach youth basketball at Hand Elementary School. (N.T. October 25, 2017, p. 215). Defendant

also testified that he is a grandfather and, therefore, he is called "Pop Pop", but that everyone from his neighborhood is called "Pop" because it is cultural. (N.T. October 25, 2017, p. 216). Defendant also testified that he never touched any bags with drug in them, he did not know the identity of the confidential informant, and he did not touch the buy money. (N.T. October 25, 2017, p. 219-221).

It is clear that the jury chose to not believe the testimony Defendant nor his wife; rather, the jury accepted the evidence and all reasonable inferences drawn from the evidence as set forth by the Commonwealth through the testimony of the investigating officers and lay witnesses as the basis for their verdict.

Contrary to Defendant's assertion, as noted above, the Commonwealth offered substantial direct and circumstantial evidence at trial as to the identity of the defendant as being the individual whom had delivered cocaine to the confidential information during the involved transactions. While the Commonwealth did not present the testimony of the confidential informant utilized in these matters, it is clear that such testimony was not necessary to sustain Defendant's convictions, in light of the multitude of evidence presented by the Commonwealth. Defendant further claims that the evidence presented by the Commonwealth was insufficient to sustain his convictions inasmuch as the Commonwealth failed to search his home. Simply stated, as the alleged transactions involved direct deliveries of cocaine at locations other than defendant's home, there is simply no requirement that the Commonwealth need search the defendant's home, regardless of whether such a search would, or would not, have produced evidence of other criminal activity. Lastly, Defendant presently contends that the Commonwealth's evidence was insufficient to support his convictions as the Commonwealth failed to present any recordings, photographs, scientific evidence, fingerprints, DNA, or

recovered recorded buy money. While it is recognized that such evidence may often been introduced in cases involving purported drug trafficking, there is simply no prerequisite requiring such evidence to be produced in all such cases.

In light of the foregoing, Defendant has not satisfied his burden to establish that the evidence was insufficient in law to sustain his conviction in the instant matter. As such, Defendant's claims in this regard must fail.

## Conclusion

Accordingly, for the reasons set forth above, this court concludes that the grounds identified by Defendant in his Concise Statement of Matters on Appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure lack merit. As such, defendant's convictions in these matters should be affirmed.

BY THE COURT:

MERRILL M. SPAHN, JR., JUDGE
June 29, 2018

ATTEST:

Copies to:     Amber L. Czerniakowski, Esquire, Assistant District Attorney
Jack McMahon, Esquire, Counsel for Defendant, 139 North Croskey Street,
Philadelphia, Pennsylvania, 19103

21